IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. DAN OLIVER, JEANNIE OLIVER, JOE SOLO, BERNARD GROSS, SUSAN KEELIN, WALTER KVASNIK, KOU SRIMOUNGHANCH, HUMBERTO GONZALEZ, SAMUEL D. LEGGETT, BRIAN ALBEE, MARY LOUISE FOWLER, JOE SHAW and RHONDA SCHULTZ, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>3D-3C, LLC, PANASONIC CORPORATION, PANASONIC CORPORATION OF NORTH AMERICA, TOSHIBA CORPORATION, TOSHIBA AMERICAN ELECTRONIC COMPONENTS, INC., and SANDISK CORPORATION,<br><br>Defendants.<br>_____/ | No. C 11-01260 JSW<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

Now before the Court is the motion filed by Defendants SD-3C, LLC ("SD-3C"), Panasonic Corporation ("Panasonic"), Panasonic Corporation of North America ("PNA"), Toshiba Corporation ("Toshiba"), Toshiba America Electronic Components, Inc. ("TAEC"), and Sandisk Corp. ("SanDisk") (collectively, "Defendants") to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs. The Court finds that this matter is appropriate for disposition without oral argument and is deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for May 25, 2012 is HEREBY VACATED. Having carefully reviewed the parties' papers and considering their arguments and the relevant authority, and

good cause appearing, the Court hereby GRANTS Defendants' motion to dismiss.

## BACKGROUND

This antitrust action challenges an alleged patent licensing arrangement to control the availability and pricing of Secure Digital Memory Card ("SD Card") technologies and thereby restrain trade. Plaintiffs are indirect purchasers of SD Cards from March 15, 2007 to the present. SD Cards are flash memory cards used in various devices such as digital cameras and cell phones. (FAC ¶¶ 43-46.)

Plaintiffs challenge the standard-setting process created in the late 1990s that resulted in the SD Memory Card Specification ("Specification") and licensing arrangements. (*Id.* ¶¶ 3, 73, 74, 80.) Defendant SD-3C licenses patents and other intellectual property necessary to practice the Specification developed by the Defendants in 1999 and released in 2000. (*Id.* ¶¶ 1,3, 53, 55-59.) According to the allegations in the amended complaint, the violations Plaintiffs challenge occurred "[a]t least as early as August 29, 1999," when Panasonic, SanDisk, and Toshiba agreed to develop the Specification jointly or "at least as early as January 1, 2000," when Defendants publicly announced the establishment of the SD Association, a standard-setting organization responsible for developing subsequent versions of the Specification. (*See id.* ¶¶ 128, 142.)

Plaintiffs contend that, by virtue of a 2003 licensing agreement, companies that wish to make SD Cards and licensed the SD-3C technology would be required to pay a 6% royalty on all SD Cards sold. (*Id.* ¶¶ 3, 62.) In 2006, SD-3D offered an amendment to the 2003 SD Card License, which included a provision that allegedly serves as a "minimum reference price of the calculations of licensees' royalty obligations" under the SD Card License. (*Id.* ¶ 5.)

In addition, Plaintiffs incorporate the allegations in a related and previously dismissed complaint filed in *Samsung Electronics Co., Ltd. v. Panasonic Corp. et al.*, C 10-03098 JSW ("Samsung Action"). (*See* FAC ¶¶ 42.) The second amended complaint in that matter, based on the same facts and specifically incorporated here, was dismissed without leave to amend on January 3, 2012 for failure to state a cognizable claim within the statute of limitations.

United States District Court
For the Northern District of California

Plaintiffs, indirect purchasers of the allegedly price-inflated SD Cards, filed this action on March 15, 2011. On February 21, 2012, Defendants jointly moved to dismiss the complaint. The Court shall address specific additional facts in the remainder of this Order.

**LEGAL STANDARD**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

## ANALYSIS

**A. Antitrust Causes of Action Are Barred by the Statute of Limitations.**

Under the Clayton Act, 15 U.S.C. section 15b, private antitrust claims are subject to a four-year statute of limitations. *See Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1300 (9th Cir. 1986). "A civil cause of action under the [antitrust laws] arises at each time the plaintiff's interest is invaded to his damage, and the statute of limitations begins to run at that time." *AMF, Inc. v. General Motors Corp.*, 591 F.2d 68, 70 (9th Cir. 1979) (quoting *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir. 1975).

Although generally a cause of action accrues and the statute of limitations begins to run at the time a defendant commits an action that injures plaintiff's business, in the context of a continuing conspiracy, this has been construed to mean that "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *AMF, Inc. v. General Motors Corp.*, 591 F.2d 68, 71 (9th Cir. 1979). In this way, the continuing violations doctrine can save an otherwise barred claim. In antitrust law, "[a] continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured." *Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (citation omitted). It is clear, however, that "a continuation of harm to plaintiffs alone will not keep the cause of action alive without some overt act or continuing conduct of defendants during the limitations period." *Electroglas, Inc. v. Dynatex Corp.*, 497 F. Supp. 97, 105 (N.D. Cal. 1980).[1] "When a continuing violation exists, the limitations period runs from the 'last overt act' by the defendant, which must be (1) a new and independent act that is not merely a reaffirmation of a previous decision that (2) inflicts a 'new

---

[1] Any harm that accrues after the tolling of the statute of limitations periods but that is associated with an overt act that occurred prior to the limitations period is not remediable. However, "each separate cause of action that so accrues [during the statute of limitations period] entitles a plaintiff to recover not only those damages which he has suffered at the date of accrual, but also those which he will suffer in the future from the particular invasion, including what he has suffered during and will predictably suffer after trial." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338-39 (1971).

4

and accumulating' injury on the plaintiff." *Red Lion Medical Safety Inc. v. Ohmeda, Inc.,* 63 F. Supp. 2d 1218, 1223 (E.D. Cal. 1999) (citing *Pace Industries*, 813 F.2d at 238).

In their First Amended Complaint, Plaintiffs in this action allege the same basic underlying facts as those that were dismissed in the related Samsung Action. Similarly, as this Court found there, Defendants' allegedly unlawful conduct occurred well beyond the statute of limitations period lapsed. According to both complaints, this conduct caused permanent cost differentials at that time. This Court, in the Samsung Action, found that the underlying facts did not create a continuing violation that restarted the statute of limitations period.

In the Ninth Circuit, "[a] cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act." *Pace*, 813 F.2d at 237. Further damages accrued by plaintiffs do not restart the statute of limitations period, even if the injuries are continuing. *See id.* The "statute of limitations is not extended by continued sales at an allegedly monopolistic price because the 'monopolist's simple charging of its profit-maximizing price is a naturally expected consequence of a monopoly and can hardly be said to be [an] independent [act].'" *Kaiser Foundation v. Abbott Laboratories*, 2009 WL 3877513, at *7 (C.D. Cal. Oct. 8, 2009) (quoting II Areeda & Hovenkamp, *Antitrust Law,* ¶ 320c4, at 298-99 (3d ed. 2007)). The "statute of limitation runs from the time of commission of the act, notwithstanding that high prices may last indefinitely into the future." *See id.*

Plaintiffs contend that, as consumers of SD Cards who did not suffer any injury until they more recently purchased the cards at supra-competitive prices, they cannot have made a claim until defendants actually extracted an excessive price. However, the Court is not persuaded by the distinction between consumers in this action and competitors in the Samsung Action. The statute of limitations, on a continuing violation theory, runs from the time of the last overt act made by the defendant, not from the last purchase made by a potential plaintiff. Should the Court find otherwise, there would essentially be no statute of limitations bar to indirect purchaser claims. As the Areeda treatise explains, if "mere[ly] charging ... a monopoly

1 price constitutes a 'continuing violation' tolling the statute, then we have indefinitely
2 lengthened the statute of limitation." *Id.* (citing Areeda at ¶ 320c, at 286).

3 Accordingly, the Court finds, based on the same or similar facts underpinning Plaintiffs'
4 claims in this matter and the related and incorporated claims in the Samsung Action, that
5 Plaintiffs' antitrust claims fall outside the statute of limitations period and are therefore
6 dismissed.

### B. Remaining Claims Are Barred.

In addition, Plaintiffs' state antitrust claims fall outside the statute of limitations period for all of the same reasons applicable to its federal antitrust claims. *See* Cal. Bus. & Prof. Code § 16750.1; *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, 4 Cal.3d 842, 852-53 (1971) (Cartwright Act interpreted consistently with Sherman Act).

Plaintiffs allege a claim for unfair competition under California Business and Professions Code § 17200 ("Section 17200") which prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice." Plaintiff claims to have suffered injury from a competitor's unlawful business act or practice. (FAC ¶¶ 140-152.) An action based on Section 17200 "borrows" violations of other laws and treats them as unlawful practices. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

The "unlawful" prong of Section 17200 prohibits "any practices forbidden by law, be it civil criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (internal quotation omitted). Because the Court has concluded that Plaintiffs have failed to state a claim under any independent law, the Court similarly finds that Plaintiffs have failed to state a claim under Section 17200 for unlawful business practices and dismisses the claim.

Lastly, because the Court finds that Plaintiffs fail to state a claim under either federal or State law, their last claim for unjust enrichment and disgorgement of profits fails to state a claim for damages.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the entirety of the First Amended Complaint. Having been given previous three chances to amend the complaint in the related matter based on the same set of facts and having dismissed this once-amended complaint based entirely on an issue of law, the Court finds that it is appropriate to dismiss the complaint without leave to amend.

A separate judgment shall issue and the clerk may close the file.

**IT IS SO ORDERED.**

Dated: May 21, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE