FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAN OLIVER; JEANNIE OLIVER; JOE SOLO; BERNARD GROSS; SUSAN KEELIN; WALTER KVASNIK; KOU SRIMOUNGHANCH; HUMBERTO GONZALEZ; SAMUEL D. LEGGETT; BRIAN ALBEE; MARY LOUISE FOWLER; JOE SHAW, On their own behalves and on behalf of all others similary situated; RHONDA SHULTZ, *Plaintiffs-Appellants*, <br><br> v. <br><br> SD-3C LLC; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; TOSHIBA CORPORATION; SANDISK CORPORATION, *Defendants-Appellees*. | No. 12-16421 <br><br> D.C. No. 3:11-cv-01260-JSW <br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
December 5, 2013—San Francisco, California

Filed May 14, 2014

Before: Ronald M. Gould and Richard A. Paez, Circuit Judges, and David A. Ezra, District Judge.*

Opinion by Judge Paez

## SUMMARY**

**Antitrust**

The panel reversed the dismissal as time-barred of an action in which purchasers of SD digital memory cards alleged that Panasonic Corp. and other defendants violated federal and state antitrust laws by conspiring to fix the price for SD cards and engaging in improper practices with respect to the licensing of their patents to other manufacturers of SD cards.

Distinguishing *Samsung Electronics Co. v. Panasonic Corp.*, 12-15184, 2014 WL 1328318 (9th Cir. Apr. 4, 2014), the panel held that because the plaintiffs only sought injunctive relief under § 16 of the Clayton Act, their federal antitrust claim was subject to the equitable doctrine of laches and not the four-year statute of limitations in § 4B of the Clayton Act. The panel held that the plaintiffs' allegations in their first amended complaint were sufficient to establish that laches was not a bar to their federal antitrust claim because a

---

* The Honorable David A. Ezra, District Judge for the U.S. District Court for the Western District of Texas, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

continuing violations exception and a speculative damages exception for computing the laches period both applied.

The panel also reversed the district court's dismissal of the plaintiffs' antitrust claim under California's Cartwright Act and instructed that on remand, the district court should apply the California Supreme Court's decision in *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013), in determining whether the Cartwright Act claim was timely filed.

### COUNSEL

Amanda Bonn (argued), Susman Godfrey LLP, Los Angeles, California; Max L. Tribble Jr., Joseph S. Grinstein, Eric J. Mayer, Susman Godfrey LLP, Houston, Texas, for Plaintiffs-Appellants Dan Oliver, Jeannie Oliver, Joe Solo, Bernard Gross, Susan Keelin, Walter Kvasnik, Kou Srimounghanch, Humberto Gonzalez, Samuel D. Leggett, Brian Albee, Mary Louise Fowler, and Joe Shaw, on their own behalves and on behalf of all others similarly situated, and Rhonda Shultz.

Christopher B. Hockett (argued), Davis Polk & Wardwell LLP, Menlo Park, California, for Defendant-Appellee SD-3C, LLC; Jeffrey L. Kessler, Winston & Strawn LLP, New York, New York, for Defendants-Appellees Panasonic Corporation and Panasonic Corporation of North America; Richard S. Taffet, Bingham McCutchen LLP, New York, New York, for Defendant-Appellee SanDisk Corporation; and Daniel M. Wall, Latham & Watkins, San Francisco, California, for Defendant-Appellee Toshiba Corporation.

# OPINION

PAEZ, Circuit Judge:

In this antitrust suit, Plaintiffs, purchasers of SD digital memory cards, allege that Defendants Panasonic Corporation, Toshiba Corporation, SanDisk Corporation, and SD-3C, LLC (collectively "Defendants") violated federal and state antitrust laws by conspiring to fix the price for SD cards and engaging in improper practices with respect to the licensing of Defendants' patents to other manufacturers of SD cards. The district court dismissed Plaintiffs' claims as time-barred. Reviewing *de novo*, we reverse. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).[1]

Recently, in a related action, *Samsung Electronics Co., Ltd. v. Panasonic Corp.*, 12-15185, 2014 WL 1328318 (9th Cir. Apr. 4, 2014), we held that the district court erred in concluding that the Clayton Act's four-year statute of limitations barred Samsung Electronics Company's antitrust claims for damages and injunctive relief against Panasonic Corporation, Panasonic Corporation of North America, and SD-3C. In this case, unlike the plaintiff in *Samsung*, Plaintiffs only seek injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26. Because Plaintiffs seek only injunctive relief under federal law, their federal antitrust claim is subject to the equitable doctrine of laches and not the four-year statute of limitations in section 4B of the Clayton Act, 15 U.S.C. § 15b. Taking Plaintiffs' allegations in the First Amended Complaint ("FAC") as true, as we must at this stage of the litigation, we conclude that they are sufficient to

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

establish that laches is not a bar to Plaintiffs' federal antitrust claim. Accordingly, we reverse and remand for further proceedings.

**I**

In giving factual context for the federal and state antitrust claims, Plaintiffs allege essentially the same facts regarding the development of SD cards as those alleged in *Samsung*. We therefore draw liberally from our *Samsung* opinion in setting the stage for Plaintiffs' lawsuit and their challenge to the district court's dismissal order.

SD cards are the dominant form of flash memory card on the market, and are widely used in consumer electronics devices such as cellular phones and digital cameras. In 1999, Panasonic, Toshiba, and SanDisk developed SD cards as a modified proprietary format of the flash memory cards then available, created the SD Group to promote their use, and created SD-3C to license the format to manufacturers. In 2003, Defendants created a standard license (the "2003 license") that contained a clause imposing a 6 percent royalty on SD cards sold by manufacturers who were not members of the SD Group.

In 2005 and 2006, Defendants developed two new forms of SD cards: the high capacity SD card ("SDHC") which was the same physical size as the first-generation product, but used distinct software to give it a substantially higher storage capacity than the original; and the much smaller microSD card, designed for use in mobile phones. By its terms, the 2003 license did not cover these new formats. The SD group met in the fall of 2006 and adopted an "Amended and Restated SD Memory Card License Agreement" (the "2006

license"), which contained the same 6 percent royalty terms for non-SD Group manufacturers of the two new formats as the 2003 license had required for the original cards.

The 2006 license also included a "fair market price" provision pursuant to which Defendants were authorized to determine the "fair market price" of SD cards and to use that price as a baseline in calculating royalties. Plaintiffs allege that this provision shows that Defendants, who control 70 percent of the SD market, intended to "agree upon and charge a 'fair market price' for their SD [c]ards," i.e. to fix the price for SD cards in violation of federal and state antitrust laws.[2] Plaintiffs further allege that, in addition to fixing the price of SD cards, Defendants' licensing practices violate antitrust laws because Defendants do not separately license certain patents that are part of the SD-3C patent pool and, furthermore, refuse to negotiate the terms of the SD Card License.

Plaintiffs filed their lawsuit on March 15, 2011 and, of note here, they allege that they purchased SD cards on or after March 15, 2007. Plaintiffs' first claim for relief seeks an injunction under section 16 of the Clayton Act, 15 U.S.C. § 26, to enjoin Defendants' alleged violations of section 1 of the Sherman Act, 15 U.S.C. § 1. Unlike the corporate plaintiff in *Samsung*, Plaintiffs do not seek treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, as a remedy for Defendants' unlawful acts. Plaintiffs' second claim for relief alleges violations of California's antitrust law,

---

[2] Defendants argue that the allegations regarding the fair market price provision are not sufficient to establish the existence of a price-fixing conspiracy. We express no opinion on this issue. As set forth *infra* in section IV, we leave this issue for the district court to address on remand.

the Cartwright Act, Cal. Bus. & Prof. Code § 16720. Plaintiffs seek treble damages in connection with this claim. Plaintiffs' third, fourth, and fifth claims for relief are for: (1) unlawful conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200; (2) violations of the antitrust laws of various states, e.g. Arizona, the District of Columbia, and Kansas;[3] and (3) unjust enrichment and disgorgement of profits.

As in *Samsung*, the district court dismissed Plaintiffs' claims on the ground that they were time-barred. The district court held that the four-year statute of limitations set forth in section 4B of the Clayton Act, 15 U.S.C. § 15b, applied to Plaintiffs' claims for injunctive relief and reasoned that Defendants' allegedly unlawful conduct began well before the start of the four-year limitations period. *Oliver v. 3D-3C, LLC*, No. C 11-01260 JSW, 2012 WL 1835740, at *3 (N.D. Cal. May 21, 2012). The district court dismissed Plaintiffs' state law claims on the same ground. *Id*. Given the narrow ground on which the district court dismissed Plaintiffs' lawsuit, we need only determine whether the court properly dismissed Plaintiffs' federal antitrust claim as time barred.

## II

Although a claim for injunctive relief under section 16 is "analogous" to a claim for damages under section 4, section 16 provides a distinct cause of action. *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Electronics Corp.*, 518 F.2d 913, 926 (9th Cir.

---

[3] Plaintiffs seek to maintain their action on behalf of themselves and a series of sub-classes consisting of consumers from various states who purchased SD cards within the class period, which includes the period from March 15, 2007 to the present.

1975) *disapproved of on other grounds by California v. Am. Stores Co.*, 495 U.S. 271 (1990) ("Clayton Act [§] 16 provides a private equitable remedy, analogous to the private legal remedy of Clayton Act [§] 4, as a method of enforcement of the prohibitions of Clayton Act [§] 7."). Unlike damages claims under section 4, which are subject to section 4B's four-year statute of limitations, there is no statute of limitations for injunctive relief claims under section 16. Claims for injunctive relief, however, are subject to the equitable defense of laches.[4] *Id.* at 928. And, "in computing the laches period," section 4B's four-year statute of limitation is used as a "guideline." *Id.*; *see also Samsung*, 2014 WL 1328318 at *4. Therefore, in applying laches, we look to the same legal rules that animate the four-year statute of limitations under section 4B. Ordinarily, "[a] cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)). As we discussed in our *Samsung* opinion, however, there are recognized exceptions to this general rule.

First, "[i]n the context of a continuing conspiracy to violate the antitrust laws, . . . each time a plaintiff is injured by an act of the defendant[] a cause of action accrues to him to recover the damages caused by that act." *Zenith*, 401 U.S. at 338. "[A]s to those damages, the statute of limitations runs from the commission of the act." *Id.* In order to restart the

---

[4] Under the doctrine of laches, a suit seeking equitable relief will be barred if a party has inexcusably delayed pursuing his claim and his adversary has been prejudiced as a result. *Int'l Tel. & Tel. Corp.*, 518 F.2d at 926.

statute of limitations, there must be a new overt act that: (1) is "new and independent . . . [and] not merely a reaffirmation of a previous act," and (2) "inflict[s] new and accumulating injury on the plaintiff." *Pace*, 813 F.2d at 238.

Second, the limitations period may start to run after the defendant's initial violation of the antitrust law, if it is "uncertain" or "speculative" whether the defendants' antitrust violation has injured the plaintiff at the time of the violation. *AMF, Inc. v. General Motors Corp. (In re Multidistrict Vehicle Air Pollution)*, 591 F.2d 68, 72 (9th Cir. 1979) (citing *Zenith*, 401 U.S. at 339); *see also Samsung*, 2014 WL 1328318 at *4–5. In such cases, the statute of limitations period begins on the date that the plaintiff's damages first "accrued and became ascertainable." *AMF*, 591 F.2d at 73. We hold that both exceptions apply here.

Turning first to the continuing violation exception, the Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *see also Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986) (holding that a new overt act occurred each time tour operators' shepherded tourists away from plaintiffs' shop in exchange for payment); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290–91 (4th Cir. 2007) ("[I]n cases like this one involving allegations of 'a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again.'" (quoting *Klehr*, 521 U.S. at 189));

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) *amended in part*, 211 F.3d 1224 (11th Cir. 2000) (holding that each sale of milk a price-fixed price constitutes a new overt act (citing *Klehr*, 521 U.S. at 189)). Here, Plaintiffs allege in the FAC that they purchased SD cards on or after March 15, 2007, which is within four years of March 15, 2011, the date on which this lawsuit was filed. Because Plaintiffs allege that they were injured within the four-year limitations period, Plaintiffs have alleged sufficient facts to show that laches does not bar their federal antitrust claim.[5]

Plaintiffs' claims are also timely under the speculative damages exception. In *Zenith*, Zenith's antitrust claim was not time-barred because, as the Supreme Court recognized, to require Zenith to establish damages at an earlier date would have required Zenith to present speculative evidence regarding Zenith's future performance. 401 U.S. at 341–42. This evidence likely would have been rejected by the trial

---

[5] Defendants argue, relying on *AMF*, that the alleged anti-competitive impact caused by their combination was "permanent at initiation," i.e. in the early 2000s when they first allegedly combined to develop the SD standard, and that the continued sales of SD cards at supracompetitive prices were "but unabated inertial consequences of [their] pre-limitations action." 591 F.2d at 72. Therefore, Defendants argue that Plaintiffs' lawsuit should have been filed within four years of Defendants' initial violation of the antitrust laws. As we explained in *Samsung*, "*AMF* is the exception, not the rule." *Samsung*, 2014 WL 1328318 at *2. In *AMF*, "the unique nature of the automobile business meant that the initial refusal to deal was an 'irrevocable, immutable, permanent and final' decision and any damages that occurred during the limitations period 'necessarily resulted from'" the initial refusal. *Id.* (quoting *AMF*, 591 F.2d at 72). Here, in contrast, "the license itself did not permanently and finally control the acts of" Defendants. *Id.* Defendants could have ceased charging the price-fixed price at any time.

court had Zenith filed suit earlier. *Id*. Similarly, in this case, Plaintiffs allege that they purchased SD cards in March 2007. Before Plaintiffs purchased SD cards, it would have been pure speculation whether Plaintiffs would have been harmed by Defendants' alleged unlawful acts. Plaintiffs should not be penalized for failing to foresee earlier that they would enter the market for SD cards and would therefore be harmed by Defendants' conduct. *See Samsung*, 2014 WL 1328318 at *4 (holding that the law did not require Samsung to bring suit where it was not clear whether Samsung would enter the market for SD cards and "the harm to Samsung . . . was [therefore] speculative at the time of the initial wrong").

Thus, for the foregoing reasons, we conclude that Plaintiffs have alleged sufficient facts in the FAC to demonstrate that laches is not a bar to their federal antitrust claim.

### III

The district court also erred in dismissing Plaintiffs' state law claims. The district court held that "Plaintiffs' state antitrust claims fall outside the statute of limitations period for all the same reasons applicable to its federal antitrust claims." *Oliver*, 2012 WL 1835740 at *3 (citing Cal. Bus. & Prof. Code § 16750.1; *Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.*, 4 Cal. 3d 842, 852–53, 94 Cal. Rptr. 785, 484 P.2d 953 (1971) (stating that the Cartwright Act is interpreted consistently with the Sherman Act)). Because we have concluded that Plaintiffs' federal antitrust claim is timely, we vacate the district court's dismissal of the state law claims and remand. On remand, the district court should apply the California Supreme Court's recent decision in *Aryeh v. Canon Business Solutions, Inc.* 55 Cal. 4th 1185,

1195, 151 Cal. Rptr. 3d 827, 292 P.3d 871 (2013) in determining whether Plaintiffs' Cartwright Act claim was timely filed. *See Samsung*, 2014 WL 1328318 at *4 n.4.

## IV

In addition to asserting the statute of limitations as a defense, Defendants raise a host of additional challenges to Plaintiffs' claims. Because the district court has not yet considered these issues, we leave them to the district court to address in the first instance on remand.

## V

The district court's dismissal order is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**